YATES, Judge.
The plaintiff, Charles Allen Johnson, appeals from a summary judgment in favor of the defendant, the City of Marion. The case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P. “If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to [present substantial evidence creating] a genuine issue of [material] fact.” Hinkle v. Burgreen Contracting Co., 678 So.2d 797, 799 (Ala.Civ.App.1996). “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
On August 21, 1995, Johnson was hired as the chief of police for the City of Marion. Before he was hired, he was given a *483 list of the qualifications for the position of police chief, which included meeting the minimum standards established by Alabama law for Alabama law-enforcement officers. Johnson took an oath of office in which he swore that he had the qualifications necessary for the position.
It was learned that Johnson did not have a valid driver’s license and that he did not possess the minimum standards established for law-enforcement officers. In 1971, Johnson had attended four weeks of police training in Indiana, but had withdrawn before completing the course. Johnson received some other training and was considered “grandfathered” into service in Indiana. According to the Alabama Peace Officers Standards and Training Commission, officers grandfathered or exempted from training will not be certified unless further courses are completed. Rule 650-X-4-.0S.
On February 5, 1996, Johnson was terminated as police chief. The reasons given for the termination were lack of leadership abilities and failure to be properly certified by the State of Alabama. Johnson sued the City, alleging that his termination breached a contract of employment. According to Johnson, the City knew of his deficiencies before it hired him. He also states that he now has a valid driver’s license and that he had planned to attend the Police Academy in February 1996. The trial court entered a summary judgment in favor of the City.
On appeal, Johnson argues that although he signed no employment contract, provisions in a “benefits handout” constituted an offer to create a unilateral contract. The one-page handout included the following phrases: “Time frame if terminated: At the discretion of the Mayor and Council — but must be reasonable.” Johnson further argues that, based on the handout, there is a fact question as to whether his termination was reasonable.
“The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party. Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all. See Bell v. South Central Bell, 564 So.2d 46 (Ala.1990). While at-will employment is indeed the traditional model, Alabama has, in the relatively recent past, imposed certain limits on an employer’s right to discharge an employee. Among those limitations is an exception, recognized by this Court, for implied contracts arising out of the use of an employee handbook. In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), Alabama adopted the position taken by a number of other jurisdictions, that the provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship’s at-will status. Modeled on the leading case of Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn.1983), Hoffman-La Roche represented a departure from the at-will doctrine, but it also recognized that not all employer communications would justify such treatment. Rather, only those employer communications meeting the traditional requirements for the formation of a unilateral contract — an offer, communication, acceptance, and consideration — will bind the parties.”
Ex parte Amoco Fabrics & Fiber Co., 729 So.2d 336, 339 (Ala.1998).
In Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), the supreme court held that certain provisions in an employee handbook issued by the company modified the employment relationship between the company and its employee so as to make the relationship terminable only by compliance with those provisions. The “employee-at-will” relationship between the company and the employee was modified by the terms set out in the handbook. The handbook issued by the company in Hoffman-La Roche was very detailed and gave clearly defined procedures for termi *484 nation, among other things. The handbook included a description of five kinds of termination (e.g., layoff, resignation, termination for cause) and a description of what the company would do if it terminated an employee (e.g., notify the employee in writing of the status of any benefits). The handbook met the requirements for a unilateral contract and was enforceable against the company. The supreme court held that the question whether such a contract existed should be determined by applying the following analysis to each case:
“First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer.”
Id., at 735.
In Hoffman-La Roche, the language used in the handbook was clear and detailed enough that an employee reading it could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all the procedures set out in the handbook had been followed. “[T]o become a binding promise, the language used in the handbook [i.e., the handout] must be specific enough to constitute an actual offer rather than a mere general statement of policy.” Hoffman-La Roche, 512 So.2d at 734.
In the present case, the lone provision in the handout would not support a finding that the City was offering not to terminate Johnson at will. The language in the handout is not specific enough to constitute a unilateral offer of employment by which the relationship between the City and Johnson could have been anything other than an employee-at-will relationship. At best, the language used in the handout is dealing with the “time frame” the City would observe in regard to the termination, if it chose to terminate Johnson’s employment. It does not deal with grounds for termination.
Because we conclude that the statement in the handout did not constitute a unilateral contract, we need not consider whether Johnson’s termination was “reasonable.” Johnson was an employee-at-will and could be terminated with or without cause or justification. Ex parte Amoco, 729 So.2d 336.
Accordingly, we affirm the summary judgment.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ„ concur.